And we're going to go on to the next case, oh my goodness, and that is case number 22-1359 KAP Holdings, LLC v. Mar-Cone. Mr. Fink, is that you? Yeah. Good morning, Your Honors. My name is Carl Fink, representing the Plaintiff Parts Scription. Your Honors, we appeal on the basis that the district court made two errors in granting the motion to dismiss for lack of stating a claim under 12b-6. The standard is whether or not the claim was plausible, but the district court actually didn't even address plausibility. It jumped straight to ruling on the merits. There was no discussion in the opinion about the plausibility of the claim and whether or not there was a definite and certain agreement to form a partnership. The claim has to do with an agreement to form a partnership, not an actual breach of agreement of a partnership agreement. I understand that's your theory. I have trouble understanding how you can separate an agreement about forming a partnership from what the partnership was supposed to be doing and how long. Your Honor, the Uniform Partnership Act is very clear that those are two different agreements. Until there is a partnership, there can be no partnership agreement. The case law that we cited, the Illinois State case law, Rankin, specifically recognizes you can have a separate agreement before you form a partnership, which is an agreement to form a partnership, even though no partnership is ever actually formed. We rely on that Rankin case. In Rankin, money had changed hands. Was that the land the building had been built? Yes, Your Honor. Clearly there was a contract, and the question was what are the terms. How would you calculate damages, for example, for the alleged breach of an agreement to form a partnership without an agreement about what that partnership would do? The damage calculation would be based on what the anticipated partnership business would be and what profits would be realized by that partnership. Granted, eventually there would have to be a partnership agreement, but in this case that agreement never came to be. Or not, right? Because you could never reach an agreement, and obviously you've got a lot of terms that were never agreed upon here. Yes, but in this case the agreement was an agreement to form a partnership, so they agreed. Was it a partnership or a joint venture, an LLC, a corporation? What was it going to be? It was going to be a partnership, Your Honor. Really? Yes. Says who? Says the term sheet. It says we haven't agreed on the exact form. The term sheet specifically says the parties have agreed to form a partnership. The parties also had a preliminary meeting that led to the term sheet where the term sheet specifically confirms the agreement of the parties. That means we're relying on the original discussion on November 1st where the two CEOs shook hands. I thought you were relying on the term sheet. No? The term sheet is part of what we're relying on. It's an agreement and then the terms of the agreement, and the term sheet confirms that the parties agreed to form a partnership.  It's a merger of the e-commerce platforms. The parties had already met. How many million dollars do you think that handshake committed? Well, Your Honor, they exchanged revenue projections. They were in the range of 30, I believe, to over $50 million. Gross or profit? Revenue per year, Your Honor. The reason being that Marcon is the giant in this industry. They are almost like the Amazon, and our client was bringing to the giant a set of 26,000 customers, a very large percentage of the addressable market for hardware stores in America, which were not yet customers. They would then take off, and with the merger of the databases, they would then be able to expand the business of Marcon in a dramatic way. The parties looked at the projections, looked at the revenue projections, and they agreed to form a partnership based on those projections. At what date do you think Marcon was locked in and couldn't bail out of the partnership? What's the date? I would say the date was the date that they agreed on the term sheet, which would have been January 22nd, I believe it is, of 2019. And is it your position that after that date, Marcon had to go through with the partnership? Yes, Your Honor. Under any circumstances? Yes, Your Honor. There are no circumstances in your view that would ever allow Marcon to bail out of the partnership agreement even after that date. They were obligated to go through with it, Your Honor, because they were obligated and agreed upon forming a merger of the two e-commerce platforms. They knew how to combine the platforms. They had technical discussions between them before they reached this agreement. They then looked at the term sheet. The term sheet requires that they combine the e-commerce platforms, put it on Marcon's platform, and then Partscription would then assign its 26,000-some customers to the new joint venture and the new merged e-commerce platform. And so the die was cast when they agreed to go forward on this. And if we agree with you, how much should we assess for damages for breach of an agreement to form a partnership and not breach of a partnership agreement? Well, following the Rankin decision and what was said in Rankin is in this kind of situation, where there was a failure to follow through and the partnership was never formed, then the plaintiff in that case is entitled to make a claim for the profits that were lost. We're looking for the benefit of the bargain. Had they gone through with the bargain, they would have completed merger of the platforms, the partnership would have been formed, and then they would have realized very large revenues and profits. And under the clear-cut holding in Rankin, lost profits are awardable. It's common expectation damages. It's the benefit of the bargain. It's contracts 101. I'm asking you for how much you think that is. In dollars? Yeah. Well, we have estimated, you know, this is at the motion to dismiss stage. We haven't calculated specifically, but the revenue projections were on the order of $20 million to over $50 million a year, and we believe that the profits would have been a very large percentage of that. Subtract out the cost of buying the parts, the cost of doing business was for each part they sold, they had to pay a supplier, and then they were resellers, selling the parts to the public and others. So we're talking about a claim that we think is worth at least $50 million in terms of damages. Mr. Fink, the record includes the amended complaint here. Yes. What do those additional allegations add, if anything, to make this form what you say is a contract? Two parts to that, Your Honor. One is we say in the proposed amended complaint that the parties specifically discussed the next steps to be taken to complete the merger, that is, the technical integration. They agreed that it would take up 30 to 60 days and that they would go forward in doing the merger and the technical integration. And, in fact, they did start to do that. The other thing we've pointed out in our brief, because it's come up, is did the parties actually discuss on that day when they agreed on the term sheet that they had an agreement to form a partnership and they would go forward with the merger of the platforms? We haven't said that specifically in the amended complaint. I think we pointed out in our briefing our client will testify that they did have that discussion and they did agree that they had an agreement, they were going to merge the platforms, and go forward in forming a partnership. And that was really the last significant step needed to actually accomplish formation of the partnership. Did the parties ever agree on nondisclosure agreements? I'm sorry, sir. Did the parties ever agree to terms of nondisclosure agreements in exchange of technical information? In this case, the nondisclosure agreements that were asked to be signed were to protect confidentiality of customer information. Sure. They were not signed. Those agreements were never signed. That was still something that needed to be done and was not done. Why isn't that a pretty serious problem, given this kind of technical integration requires everybody to show some pretty sensitive information? I agree, Your Honor. It is a serious problem. That was part of the breach of the agreement. The agreement also included the requirements. Was there some sort of standard terms of a nondisclosure agreement for this context that would apply, or is that something that is a pretty material term that was never agreed upon? Your Honor, it's a pretty standard thing to have a nondisclosure agreement. To have one, yes. But in this case, Your Honor, there were nondisclosure agreements previously signed by Partscription. That's going back about 15 years, right? For all their customers that require them. Those agreements were going to be provided. I can't remember if they actually were provided, but they were to be provided to Marcon so that Marcon could sign the nondisclosure agreement protecting their confidentiality as well. I see I've run out of time. Thank you, Your Honor. Thank you, and we will now hear from Mr. Chapin. Good afternoon, Your Honors, and may it please the Court. The facts alleged in this complaint, including the unsigned term sheet upon which the complaint relies, are so far short from alleging a plausible breach of contract claim that it's difficult to know where to begin. The district court began with the lack of clear and certain terms, but the complaint also fails to allege a meeting of the minds which would be necessary to form an agreement. In short, this was an incredibly preliminary discussion. The term sheet is a four-page marketing document. It's a pitch. It's nothing more. Even if had Marcon responded to the email forwarding it saying, I accept there's nothing for Marcon needed to do, or indeed what plaintiff needed to do, based on that document. This is not a case where the parties agreed to all the essential terms of a partnership or a joint venture, and where one party contributed property or services to a common interest, the other did not. Rather, this is a case at best where the parties agreed to undertake a business venture, but discussions were preliminary and did not raise the level of binding legal agreement. Of course, well-planned factual complaints are accepted as true in a motion to dismiss, and the district court did this, but conclusions need not be accepted as true and courts need not strain to find inferences favorable to plaintiffs, which are not apparent on the face of the complaint, nor are they required to ignore facts set forth in the complaint or the exhibits to undermine the plaintiff's claim. In this case, the term sheet says that PSM would integrate Partscription's current multi-category part selection, as previously outlined in past presentations, into Marcon's most sophisticated platform environment to provide unparalleled services and capability. While this is patent marketing jargon and an expression of what PSM would be post-integration, it is not a promise to contribute a specific right, interest, profit, or benefit. Nevertheless, the plaintiff characterizes this statement as an alleged oral agreement where each party agreed to take certain acts towards forming a partnership that was, essentially, an integration of their e-commerce platform. If we accept Partscription's allegation that there was an oral agreement either at the November, well, now we're saying January 22nd, I guess. That was a phone call. To what was Marcon agreed? Apparently, to form a partnership. But, again, that's similar to what we described as the agreement to agree. Or, as the district court cited, Hoffman versus Sanger is the three individuals who came together to form a partnership to buy an aircraft for profit. There's just not enough terms in there to bind the parties. No? This case, I think, is similar to another case that we cited in the briefs that hasn't been discussed much, which is Levy versus Firks. This is a case that's referenced by Rankin with respect to how to calculate damages, and that was actually in the concurring opinion. But in the Levy-Firks case, which is out of the California Appellate Court, by the way, the complaint alleged that the plaintiffs and defendants orally agreed to a joint venture to purchase certain real property for the purpose of erecting and operating a bowling alley, restaurant, and bar. Although the property was identified, it was not alleged that the agreement had been reached as to the amount the parties would be willing to pay for the property or whether the bowling alley, restaurant, or bar would be large or small or what it would cost. There was also issues in that case about how financing would be accomplished. The court concluded that it would be clear to any court, upon proof of the facts alleged, that the parties did not enter into an enforceable agreement. The court characterizes the oral agreement as merely an agreement to endeavor to agree on the terms and conditions of a written contract. And in that case, there was a motion to dismiss that was filed as the Appellate Court affirmed. I think the incomplete term sheet and the parties' words and actions demonstrate that at the pleading stage, that the parties did not intend to be bound by the alleged oral agreement. The lack of definite in certain terms and the lack of the meeting of the minds are two sides of the same coin. Under Illinois law, courts focus on the parties' intentions to determine whether an enforceable contract comes into being during the course of negotiations or whether some type of formalization of the agreement is required before it becomes binding. The intent to be bound is measured objectively by the parties' words and conduct, not their stated subjective intent as to the meaning of the agreement. The biggest concern that I have, counsel, in this case is we've got lots of open terms, the exact legal form, NDAs, who shares, who handles losses, how that's allocated, defective merchandise and who actually has control over the money of this joint venture in one form or another. You probably have a longer list in mind. My basic question is why isn't the importance of those open terms a question of fact that would get somebody passed a 12B6 motion? Because it all goes back to the case that Judge Easterbrook had, MPRO manufacturing versus Ball manufacturing, which this court analyzed that companies often get together, have preliminary discussions about how agreements might be reached but fail to do so. Which case was that? That was MPRO manufacturing versus Ball manufacturing at the Seventh Circuit from 1989. And that case was dismissed by the district court, I forget the district court judge, after reviewing the term sheet and deciding that based on the term sheet there could be no agreement or meeting of the minds. And that this court affirmed that decision. Similarly, in the PFT Robertson case, the lower court allowed these issues to go to a jury and this court said that that was an error and it should have been resolved as a matter of law. And in this case, since we have the term sheet that's attached to the complaint and we have various emails stating that there was no, there's a potential for partnering and that sort of thing, but there could be no reasonable belief on the parties that an agreement was formed. Put another way, even though one of the parties may believe that the negotiations have included all items agreed upon and the contract closed, there is still no contract unless it is reasonable in its belief and the other party ought to have known they would so believe. And that's from Board v. Warner from Illinois Supreme Court, citing Corbin on contract. And with the incomplete term sheets and plaintiff's emails, both subsequent and prior to the oral agreement, it is not reasonable to believe that the parties entered into a binding legal agreement to form a partnership and it is further not reasonable to expect Marcon to know that Mr. Price believed that the parties entered into a binding legal agreement to form a partnership. And that's why at this stage it may be dismissed under 12 v. 6. In addition, with some of my additional time, I want to talk about the issue of damages that was discussed. Specifically, in Rankin, the facts of that case were such that the plaintiff had put money into a trust. The defendant was supposed to put an interest in property into that trust but didn't do so. The defendant operated the business and actually had revenues that could be calculated. And in citing and in determining damages, the Rankin decision looked at what had been done, that they had operated the business for approximately a year, and that was the basis on which they were able to determine how much damages would do. The court declined to go further. The court declined to give damages on prospectively, for more damages and props in the future, only what could be determined as certain. In this case, it's all prospective, all speculated damages. Illinois has not overturned the new business rule, which still applies in this case. The Levy case, which I cited earlier, which was cited by Rankin with respect to damages, and the concurrence of that opinion said, well, how do we remedy this situation? Well, you remedy the situation by putting the plaintiff back in a position they would have been as a party to fill the agreement. Well, that's rescission, but there's no allegation in the complaint that $15,000 was put into a trust fund and used and taken away and couldn't be given back. There's another case we cited in the brief. I believe it's Coley v. Eccles, which also issued a decision based on rescission that has the appropriate remedy in this circumstance. But again, under the complaint, there is no allegation that they actually contributed anything of value and it has been damaged in any way. It's all speculative damage. Let me ask you about this. There was clearly not yet an agreement about the, quote, legal form that would be used for this joint venture of some sort. Are there differences, as you understand the law, among a partnership, a limited partnership, an LLC, a joint venture contract that's custom-tailored, a corporation, those are at least the options that come to my mind, in terms of the ability to terminate grounds for termination and processes for termination? Well, certainly, had the parties, I mean, if they formed an LLC, then the state LLC statute would determine how that could be dissolved. The partnership statute would be involved. It could make a major difference on how to dissolve a partnership if one was formed, or a joint venture, or an LLC, or a corporation. I mean, I think the term partnership was thrown around loosely, and it wasn't a formal partnership, it was just people referring to themselves and partnering in a deal. And since the preliminary negotiations never got beyond the stage, the very early stage, there was no agreement that could be considered binding. And that is our position in this matter. Unless the court has any questions, I will request that the court affirm the district court's opinion. Thank you very much, Mr. Chaik and Mr. Fink. You had requested two minutes, and I'm going to give it to you. Thank you, Your Honor. Addressing a couple of points. One, the issue of the legal form of the entity. The term sheet mentions partnership. There is a mention slash joint venture. We've cited case law that says that the difference between the two is so slight that you evaluate either one essentially the same way. So the difference between either a joint venture or partnership is not a critical term. And nothing in the discussions of the parties or the term sheet indicates that they wanted to hold up an agreement until they figure out the exact form of the final agreement and the partnership agreement. On the new business rule, this is clearly not applicable here. These companies were in the business of selling the product in question, in the marketing question, using the e-commerce software and the platforms that they were going to merge. Nothing was new about this. They were simply combining existing businesses. And in that situation, it's pretty clear-cut that the new business rule doesn't apply. I'm a little bit concerned because the tenure of all the questions so far has been, what is the evidence? Well, at this stage, in a 12B6 stage, the plaintiff's not required to show evidence. We're required to show, make allegations with some possible support. It turns out the term sheet, when construed in favor of partscription, not against partscription, which I would offer the district court did, clearly shows numerous requirements that were going to be agreed upon to form the partnership. It spelled out exactly how to go about forming the partnership. The parties already knew about how to do technical integration, so there was no need to be specific on the exact steps of technical integration. So in our view, the complaint and the term sheet go way beyond showing a plausible claim. Since we don't need to show evidence at this stage, clearly our client should be given the opportunity to present evidence to support its claim. And it would be premature to rule on the merits that there is no claim for breach of the contract to form executive contract to form the partnership. Thank you. Thank you very much. Thanks to all parties. And the case will be taken under advisement. And with that, we will call today to close, and the court will again reconvene tomorrow morning. Thank you, everyone. Bye-bye.